IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BAKORE MAKADJI, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GPI DIVISION OF HARMONY | : | |
| ENTERPRISES, INC., et al., | : | No. 05-3044 |
|     Defendants. | : | |

## MEMORANDUM AND ORDER

**Schiller, J.**                                                                                            **May 23**, **2007**

Plaintiff Bakore Makadji brings this products liability action against Defendants GPI Division of Harmony Enterprises, Inc., Harmony Enterprises, Inc. ("the Harmony Defendants"), and Ver-Tech, Inc. ("Ver-Tech"). On December 1, 2006, this Court granted Defendants summary judgment as to Plaintiff's failure to warn claim and denied Defendants summary judgment as to Plaintiff's design defect claim. Defendants did *not* move for summary judgment based on the theory that the industrial compactor was, as a matter of law, not "unreasonably dangerous." Therefore, the Court reserved judgment on that legal issue.

Subsequent to this Court's December 1, 2006 ruling, the Third Circuit issued *Moyer v. United Dominion Industries*, which clarified that, under Pennsylvania law, a court must make a legal determination as to whether a product is "unreasonably dangerous" *prior* to trial.[1] 473 F.3d 532, 538 (3d Cir. 2007). Presently before the Court is the Harmony Defendants' second motion for summary judgment, which is predicated on the theory that the product at issue is not unreasonably dangerous.

---

[1] Before *Moyer* it was established that the unreasonably dangerous inquiry should be determined as a matter of law; it was unclear, however, whether courts were required to make the determination before trial. *See Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1049 n. 10 (3d Cir. 1997) (unreasonably dangerous determination properly made in context of either summary judgment or directed verdict).

That motion, filed six and a half months after its due date, is untimely and will be denied as such. Nonetheless, in light of *Moyer*, the Court revisits the issue of whether the industrial compactor at issue in this case is unreasonably dangerous.

I.   **BACKGROUND**[2]

In December 2002, Plaintiff was working as a dishwasher at Sonoma Restaurant in Philadelphia, Pennsylvania. (Harmony Defs.' Mot. for Summ. J. [hereinafter Defs.' Mot.] Ex. E (Davis Dep.) at 7-10.) Plaintiff's job responsibilities included crushing boxes in Sonoma's industrial compactor, a model M30STD downstroke baler, which was manufactured by the Harmony Defendants and distributed by Defendant Ver-Tech. (Defs.' Mot. ¶ 2 & Ex. D (Makadji Dep.) at 83; Ver-Tech Def.'s Mot. for Summ. J. ¶ 1.) On December 31, 2002, while Plaintiff was operating the compactor with the door open, the hydraulic plunger descended and crushed Plaintiff's right hand, leaving him permanently unable to use it. (Defs.' Mot. Ex. D at 93, 98, 117.)

When functioning as designed, a user places boxes into the compactor and then closes the outside door. (Pl.'s Resp. to Defs.' Mot. for Summ. J. [hereinafter Pl.'s Resp.] at 2.) The fully closed door would engage the safety switch, and with the safety switch engaged, the user could push the start button causing a hydraulic cylinder to descend and crush the boxes. (*Id.*) The machine was not intended to work unless the door was closed and the safety switch was engaged. (*Id.*)

An inspection six days after Plaintiff's accident revealed that the safety switch built into the machine at issue was not functional. (Defs.' Mot. Ex. C. (Cella Dep.) at 65.) The parties dispute

---

[2] For a more complete factual background, see *Makadji v. Harmony Enterprises*, Civ. A. No. 05-3044, 2006 WL 3498324, at *1 (E.D. Pa. Dec. 1, 2006). The Court relies upon the facts submitted by the parties for and in response to the first motion for summary judgment.

whether this was the result of ordinary wear and tear, intentional misuse, or product malfunction.[3] (*See* Defs.' Mot. ¶ 27; Pl.'s Resp. ¶ 27.) Plaintiff's sole remaining claim is for strict products liability based on design defect.

## II.  DISCUSSION

### A.  Pennsylvania's Strict Products Liability Framework

Under Pennsylvania law, a plaintiff may bring a strict liability action premised on the theory that a product is defectively designed. *See Azarello v. Black Bros. Co.*, 391 A.2d 1020, 1022 (Pa. 1978); *see also* RESTATEMENT (SECOND) OF TORTS § 402A (adopted in *Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966)). Such a claim requires two distinct determinations. First, a judge must make a threshold pretrial determination, viewing facts in the light most favorable to the plaintiff, that the product under scrutiny is "unreasonably dangerous."[4] *Moyer*, 473 F.3d at 538. If the judge determines that the product is unreasonably dangerous, then the case is submitted to the jury to determine whether "the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use" and whether such design defect was the proximate cause of the plaintiff's injuries. *Phillips v. Cricket*

---

[3] There is some evidence that suggests that employees at Sonoma Restaurant used a small piece of cardboard to intentionally bypass the safety, rendering the compactor operable with the side doors open. (Defs.' Mot. Ex. E at 24-25.) Plaintiff contests these facts. Plaintiff's expert does admit, however, that there was cardboard in the machine at the time of his inspection. (Defs.' Mot. Ex. D at 91; Pl.'s Resp. Ex. A (Rasnic Preliminary Rep.) at 11.)

[4] The Third Circuit has noted, and this Court agrees, that it is highly unusual and even problematic for a court to make a legal finding predicated on a weighted view of the facts. *See Surace*, 111 F.3d at 1048 n.9. Nonetheless, in the ten years since *Surace* was decided, the Pennsylvania Supreme Court has not altered this standard.

*Lighters*, 841 A.2d 1000, 1005 (3d Cir. 2003).  This bifurcated procedure has been widely criticized by judges and academic commentators alike; nevertheless, as a court sitting in diversity, this Court is bound by Pennsylvania's "idiosyncratic" strict liability laws.  *Id.* at 1016 (Saylor, J., concurring); *see also Moyer*, 473 F.3d at 539-41; John M. Thomas, *Defining "Design Defect" in Pennsylvania: Reconciling Azarello and the Restatement (Third) of Torts*, 71 TEMP. L. REV. 217 (1998).

When making the threshold determination of whether a product is unreasonably dangerous, the Court engages in a risk-utility analysis, weighing the social and utility benefits of a product against the risks or harms associated with that product.  *Surace*, 111 F.3d at 1049-50.  This determination represents a judicial assessment of which party should bear the risk of loss.  *Azzarello*, 391 A.2d at 1025-26 (The term unreasonably dangerous "represent[s] a label to be used where it is determined that the risk of loss should be placed upon the supplier."); *Riley v. Warren Mfg., Inc.*, 688 A.2d 221, 224 (Pa. Super. 1997) (*citing Fitzpatrick v. Madonna*, 623 A.2d 322, 324 (Pa. Super. 1993)).  The following factors are considered in making this determination: (1) the usefulness and desirability of the product, including its utility to both the user and the public; (2) the likelihood that the product will cause injury and the seriousness of such injuries; (3) the availability of a substitute product which would meet the same need and not be unsafe; (4) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility; (5) the user's ability to avoid danger by the exercise of care in the use of the product; (6) the user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge about the obvious condition of the product or about the existence of suitable warnings; and (7) the feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.  *Surace*, 111

F.3d at 1046.

>   B.   **Defendants' Industrial Compactor is Unreasonably Dangerous**

The model M30STD downstroke baler is designed to compress paper and corrugated cardboard. (Pl.'s Resp. Ex. A at 4.) The machine has an interlocking safety guard that is intended to prevent it from operating when the door is open. (*Id.*) The safety guard is triggered by a small post that is affixed to the inside of the access door. (*Id.*) When the access door is closed, the post enters through a small hole in the frame. (*Id.*) Once entered, the post pushes down on an open electrical limit switch, thereby allowing an electrical current to travel through the machine. (*Id.*) With the electrical switch engaged, a user can push the start button, a steel plate inside the machine descends, and the hydraulic cylinder attached to the plate crushes the boxes. (*Id.*) If the switch is disengaged because the door is open, the steel plate can go up but cannot descend. (*Id.* at 5.)

Plaintiff asserts that there are two design defects associated with the interlocking safety switch on the compactor. First, Plaintiff argues that the safety should have been designed to be "fail safe," such that if the safety switch fails, the machine becomes inoperable. (Pl.'s Resp. Ex. C (Rasnic Supplemental Report) at 1-2.) Second, as a protective measure, the safety switch should have been designed to be less easily defeatible; in other words, it should not have been obvious to the lay user how to undermine or bypass the safety switch.[5] (*Id.* at 11-

---

[5] According to Plaintiff, the hole in the machine frame housing the electrical limit switch was readily visible, and given its prominent position, it was apparent to any user that the interlocking switch could be bypassed. In this case, Defendant alleges that the switch was intentionally bypassed by either Plaintiff or other Sonoma employees by placing a small piece of cardboard into the hole to close the limit switch.

"Where the product has reached the consumer or the user with a substantial change or alteration the question becomes whether the manufacturer could have reasonably expected or foreseen such an alteration of its product." *Davis v. Berwind Co.*, 690 A.2d 186, 190 (Pa. 1997)*; see also Parks v. AlliedSignal, Inc.*, 113 F.3d 1327, 1331 (3d Cir. 1997) ("[T]he concept of

13.) In support of his claim, Plaintiff has submitted expert reports from Russ Rasnic, a forensic engineer. Rasnic proposes multiple alternative switch designs that would ameliorate these two identified problems. Plaintiff also submits an expert report from Stephen Wilcox, who has a PhD in experimental psychology and specializes in human factors analysis. (Pl.'s Resp. Ex. B.) Wilcox opines that Plaintiff's behavior relative to the machine was readily foreseeable and that the compactor should have been designed, through mechanical safeguards or better construction, to anticipate human reflex or error. (*Id.*); *see also Surace*, 111 F.3d at 1048 (looking to human factors analysis in design defect analysis).

Taking into consideration all of the factors listed above, and bearing in mind that the judicial inquiry focuses on allocation of loss, the Court concludes that, under Plaintiff's averment of the facts, the industrial compactor at issue in this case is unreasonably dangerous. Undoubtedly, there is a social utility served by compacting cardboard and other waste materials. Nonetheless, the means by which this machine performs this activity creates profound risks. According to Plaintiff's expert Rasnic, the hydraulic plunger descends with 10,600 to 18,380 pounds of force. Rasnic proposes a number of design alternatives that he avers would mitigate the problems identified with the safety switch. (Pl.'s Resp. Ex. A at 12-13 & Ex. C at 2-5.) According to Rasnic, these alternatives were

---

foreseeability is relevant to strict products liability cases for the purpose of determining whether the use that was made of a product at the time of the accident was one that the manufacturer could have reasonably anticipated."). Although *Davis* has been criticized for incorporating the concept of foreseeability into the law of strict liability, *see Phillips v. Cricket Lighters,* 841 A.2d 1000, 1007 (Pa. 2003), the Supreme Court of Pennsylvania continues to acknowledge that manufacturers and distributors of a product may be liable for reasonably foreseeable changes to an otherwise safe product. *See Pa. Dep't of General Serv. v. United States Mineral Prods. Co.*, 898 A.2d 590, 601 n.10 (Pa. 2006).

Under the *Davis* standard, Plaintiff's claim that the compactor should have been designed to avoid foreseeable misuse is a tenable legal theory. Moreover, the question of foreseeability is one for the jury. *Fisher v. Walsh Parts & Serv. Co.*, 296 F. Supp. 2d 551, 563 (E.D. Pa. 2003).

in existence around the time the compactor was manufactured and would have been economically viable.  (Pl.'s Resp. Ex. C at 5.)  There is no evidence to suggest that the alternatives proposed by Rasnic are not feasible or are accompanied by different dangers or hazards that would outweigh the above-discussed benefits.  *See Phatak v. United Chair Co.,* 756 A.2d 690, 695 (Pa. Super. 2000) (risk-utility analysis should consider hazards associated with employing alternative designs).

Finally, although the basic risk of sustaining injury while operating this machine may be relatively obvious and avoidable with the exercise of due care, the severity of possible injury may not be altogether obvious, especially where, as here, the safety switch on the machine was easily bypassed and the machine was operable with the access door open.

Taking the facts in the light most favorable to the Plaintiff and given the gravity of the potential harms associated with the compactor and the relative ease with which the machine could have been made exponentially safer, the Court holds that the model M30STD downstroke baler is unreasonably dangerous as a matter of law.  It will be for the jury to determine at trial: (1) whether the product was safe for its intended use; and (2) if not, whether the design defects associated with the machine were the proximate cause of Plaintiff's injuries.  *See Spino v. John S. Tilley Ladder Co.*, 696 A.2d 1169, 1172 (Pa. 1997).

### III.   CONCLUSION

For foregoing the reasons, the Court finds that the product model M30STD downstroke baler is unreasonably dangerous and that Defendants should bear the risk of loss for Plaintiff's injuries.  Additionally, the Court denies the Harmony Defendants' Second Motion for Summary Judgement as untimely.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BAKORE MAKADJI, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GPI DIVISION OF HARMONY | : | |
| ENTERPRISES, INC., et al., | : | No. 05-3044 |
| Defendants. | : | |

**ORDER**

AND NOW, this **23rd** day of **May**, **2007**, for the foregoing reasons, it is hereby

**ORDERED** that Defendants' Second Motion for Summary Judgment (Document No. 49) is

**DENIED**.

BY THE COURT:

_____
**Berle M. Schiller, J.**